Virginia L. Miller (Bar No. 211124)
E-mail: gina.miller@procopio.com
PROCOPIO, CORY, HARGREAVES & SAVITCH LLP
200 Spectrum Center Drive
Suite 1650
Irvine, CA 92618
Telephone: 949.383.2997
Facsimile: 619.235.0398

Marina C. Gruber (Bar No. 271542)
E-mail: marina.gruber@procopio.com
Taylor Tejeda (Bar No. 374936)
E-mail: taylor.tejeda@procopio.com
PROCOPIO, CORY, HARGREAVES & SAVITCH LLP
3000 El Camino Real
Five Palo Alto Square, Suite 400
Palo Alto, CA 94306
Telephone: 650.645.9000
Facsimile: 619.235.0398

Attorneys for Defendant
PKL SERVICES, INC.

UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANNY BALVANEDA, on behalf of others similarly situated and the State of California under the Private Attorneys General Act,<br><br>Plaintiffs,<br><br>v.<br><br>PKL SERVICES, INC.; 4M HR LOGISTICS; and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No. 3:25-cv-00963-GPC-JLB<br><br>**REPLY IN SUPPORT OF DEFENDANT PKL SERVICES, INC.'S MOTION TO DISMISS PLAINTIFF'S CLASS AND COLLECTIVE ACTION COMPLAINT**<br><br>Date:  October 31, 2025<br>Time:  1:30 p.m.<br>Dept:  12-A |

## I. INTRODUCTION

Plaintiff attempts to avoid Labor Management Relations Act ("LMRA") Section 301 preemption by recasting the disputes as "purely statutory" or requiring application of the "clear and unmistakable waiver" doctrine as opposed to the appropriate preemption tests. Plaintiff's arguments are red herrings. Defendant's Motion to Dismiss properly applied both steps of *Burnside v. Kiewit Pac. Corp.*, 491 F.3d 1053 (9th Cir. 2007), identifying four (4) fully preempted claims that exist *solely* because the applicable collective bargaining agreements ("CBA") because Defendant is completely exempt from state laws, and the remaining claims are subject to dismissal because they cannot be adjudicated without interpreting the applicable CBAs or are derivative of dismissed claims. Plaintiff's Opposition fails to rebut Defendant's Motion. The Court should dismiss the Complaint in full.

## II. LEGAL ARGUMENT

### A. The "Clear and Unmistakable Waiver" Standard Has No Impact on How This Court Should Decide Defendant's Motion to Dismiss.

Plaintiff's Opposition spends considerable effort arguing for use of an inapplicable legal standard to the issues presented by Defendant's Motion. The "clear and unmistakable waiver" doctrine concerns whether a CBA clearly conveys that the union bargained away access to court for a specific statutory rights of its members. In *14 Penn Plaza LLC v. Pyett*, referenced by Plaintiff, the Supreme Court was considering whether the CBA in question had bargained away the right of an individual employee to bring an age discrimination claim in court and whether those claims must be brought in arbitration. 556 U.S. 247, 251 (2009). *14 Penn Plaza* says nothing about Section 301 preemption.

Plaintiff's reliance on *De La Cerda v. San Diego Convention Ctr. Corp., Inc.*, No. 24-cv-1058-CAB-DDL, 2024 WL 5059156 (S.D. Cal. Dec. 10, 2024) is similarly misplaced and has nothing to say about Section 301 preemption. *De La Cerda* involved a motion to compel arbitration under the CBA. There, the court denied a

1  motion to compel arbitration because the CBA did not clearly and unmistakably waive
2  a judicial forum for FLSA claims. The court analyzed FAA arbitrability and stopped
3  after finding no statute-specific waiver. *De La Cerda*, 2024 WL 5059156 at *2.
4  Section 301 preemption was not at issue and the court was not applying *Burnside*.

5      Plaintiff's reliance upon *Lopez*, as cited, is also misplaced. In *Lopez*, the
6  defendant moved to dismiss, in part, on the grounds that the CBA was the exclusive
7  venue for resolution of a dispute and grievance and arbitration procedures had not been
8  exhausted. *See Lopez v. S E Pipeline Constr. Co.*, 2024 WL 171391 (S.D. Cal., Jan.
9  16, 2024). This required the court to consider whether arbitration was exclusive and
10 a judicial forum had been waived by the CBA. *Id.* at *7. That issue is not before this
11 Court. Neither *Wawock v. CSI Elec. Contrs., Inc.*, 649 Fed. Appx. 556 (9th Cir. 2016),
12 nor *Ibarra v. United Parcel Serv.*, 695 F.3d 354 (5th Cir. 2012), nor *Burmudez v.*
13 *Dragados USA, Inc.*, 2021 Wl 5417658 (E.D. Cal., Nov. 19, 2021), all cited by
14 Plaintiff, concern Section 301 preemption either. All these cases concerned motions
15 to compel arbitration, and had nothing to say about Section 301 preemption. *Burnside*
16 answers the question of preemption. Plaintiff cannot rely "clear and unmistakable
17 waiver" cases to attempt to distract from the legal question of Section 301 preemption.

18 **B.  The California CBA Exemptions Dispose of Four of Plaintiff's**
19       **Claims under *Burnside* Step One Analysis.**

20     1.  <u>A CBA Applied At All Times During the Statutory Time Period</u>
21         <u>Applicable to the Class Action.</u>

22     A CBA applied to Plaintiff's entire employment period. A CBA has been in
23 effect at all times from 2020 through the present for Plaintiff's work location (i.e.,
24 Miramar and Camp Pendleton). While attempting to avoid dismissal, Plaintiff ignores
25 reality and asks this Court to ignore it as well by arguing that the CBA only covers the
26 time period of March 29, 2024 to present. There was a prior CBA in place that applied
27 to Plaintiff's employment, and this earlier CBA was referenced by Defendant in the
28 second lawsuit removed to this Court, also entitled *Balvaneda v. PKL Logistics* (Case

No. 3:25-CV-1569) (the "PAGA Action"). The PAGA Action was ordered transferred pursuant to the "Low-Number" Rule on July 7, 2025 (PAGA Action Dkt. 5, Case 3:25-CV-01569-JAH-AHG). Before the PAGA Action was transferred to this Court, Defendant filed a Notice of Removal and accompanying declarations that specifically referenced the earlier CBA. (*See* PAGA Action Dkt. 1-5, Decl. of Kevin Beaver, ¶ 4.) As part of the Motion, Defendant has filed a request that the Court take judicial notice of the Declaration of Kevin Beaver and earlier applicable CBA and the related Memorandum of Understanding extending the CBA through January 2024 in considering this Motion, since both matters are before this Court and involve the same parties, underlying facts, and contractual obligations, and are central to deciding Defendant's Motion. (Request for Judicial Notice ("RJN"), Exhs. A, B, C, D.)

### 2. Four of Plaintiff's Causes of Action Subject to CBA Exemption Are Preempted Under *Step One* Analysis.

At the first step of the *Burnside* analysis, courts assess whether the asserted cause of action involves a "right [that] exists solely as a result of the CBA..." *Kobold v. Good Samaritan Reg/l Med. Ctr.*, 832 F.3d 1024, 1032 (9th Cir. 2016) (quoting *Burnside v. Kiewit Pac. Corp.*, 491 F.3d 1053, 1059 (9th Cir. 2007)). Where a plaintiff has no statutory right because of a CBA exemption, the right arises exclusively under the CBA and Section 301 preemption applies. *See, e.g., Curtis v. Irwin Indus., Inc.*, 913 F.3d 1146, 1151 (9th Cir. 2019).

Plaintiff's Opposition tacitly concedes the strength of the CBA exemptions under the California Labor Code. Here, Plaintiff fails to credibly dispute that dismissal of four of his claims—(i) the Fourth cause of action for unpaid overtime under Labor Code Section 510; (ii) the Fifth cause of action for meal period violations under Labor Code Section 512; (iii) the Seventh cause of action for paid sick leave under Labor Code Section 245.5; and (iv) the Eighth cause of action for untimely payment of wages under Labor Code Section 204—is required under *Step One* analysis.

/ / /

        a. <u>Plaintiff Concedes that the CBA Exemption Applies to Overtime Claims Under Labor Code Section 510 and Dismissal is Proper.</u>

The CBA exemption contained in Labor Code Section 514 overrides Labor Code Section 510's overtime requirements, which Plaintiff concedes. Plaintiff's only response is that the CBA "meets the above requirements under section 514 for the time period [of March 29, 2024 through March 1, 2027]." To grant dismissal only as to claims post-2024 would be contrary to the evidence available to the Court and inefficient, as it would require Defendant to simply file an additional motion putting forward all the same CBA exemption arguments for the earlier time period. Since the prior CBA is subject to judicial notice as part of the record, dismissal of the Fourth Cause of Action is proper.

        b. <u>The Meal Period CBA Exemption Under Labor Code Section 512 Applies and Dismissal Is Warranted Under *Step One* Analysis.</u>

Plaintiff's Opposition makes two primary arguments as to why the meal period CBA exemption should not apply here, both of which fail. First, Plaintiff argues that the CBA does not "expressly provide for meal periods." (Opp., at p. 15.) This is false.

As discussed in Defendant's Motion, the CBA provides the following:

> Based on the designated work schedule, a normal shift will consist of eight (8) consecutive hours, twelve (12) consecutive hours or other scheduled hours based on the schedule design. ***The normal hours are exclusive of a meal period of between thirty (30) and sixty (60) minutes***.

CBA, § 24.02.[1]

Employees covered under the CBA get a daily meal period of between 30 to 60 minutes. Labor Code Section 512(e) does not require CBAs to include any specific standards for meal periods other than that they be provided. Plaintiff cites no case law that would support the argument that the operative CBA does not "expressly" provide

---

[1] The 2020-2023 CBA contains ***exactly*** the same provision relating to meal periods in Section 24.02. *Compare* RJN ISO Motion to Dismiss, Exh. A, Art. 24, p. 26, and RJN ISO Reply, Exh. B, Art. 24, 26.

for meal periods because he cannot do so. In fact, courts have held that similar language to the CBAs in this case that references the existence of a meal period meet Labor Code Section 512(e)'s requirement that a meal period be "expressly provided."

In *Araquistain v. Pacific Gas & Electric Co.*, 229 Cal. App. 4th 227, 230 (2014), the California Court of Appeal affirmed summary judgment in favor of the employer on the question of whether the CBA expressly provided for meal periods. In the PG&E CBA, it stated "employees who work shifts of eight consecutive hours 'shall be permitted to eat their meals during work hours and shall not be allowed additional time therefore at Company expense.'" *Id.* The court held that "[t]he parties to the Agreement expressly made alternate arrangements to allow covered employees time to eat their meals." *Id.* at 237–38. Here, similarly, the Parties' CBA provides that there is a regular work schedule, but that work schedule is exclusive of the daily meals that will be between 30 to 60 minutes in length.

Second, Plaintiff argues that the CBA does not provide for arbitration of meal period issues because "there are no meal period provisions in the CBA (except for two tacit references that do not provide substantive rights under the CBA[.]" (Opp., at p. 16.) Again, this is false. As discussed above, the CBAs do provide for meal periods. Further, nothing in the Labor Code exemption requires that "substantive rights" to meal periods be outlined in a CBA. In fact, the point of the CBA exemption is that the parties to the CBA do not need to follow the requirements of the Labor Code— i.e., meal periods do not need to started before the end of the fifth hour, be exactly 30 minutes in length, be off-duty, off-premises, or any other meal period requirements. The courts agree: "This conclusion comports with the clear intent of the Legislature to afford additional flexibility with regard to the terms of employment of employees in certain occupations, so long as their interests are protected through a collective bargaining agreement. It appears to us that when employees, "represented by a labor union, 'have sought and received alternative wage protections through the collective bargaining process,' [citation omitted] they are free to bargain over the terms of their

meal period, including whether the meal period will be of a specified length and whether employees will be relieved of all duty during that time." *Araquistain*, 229 Cal. App. 4th at 238. *Step One* preemption applies, and Plaintiff's Fifth cause of action should be dismissed.

      c.    <u>Plaintiff Concedes that the CBA Exemption Applies to Paid Sick Leave Claims</u>.

As with the overtime claims, Plaintiff concedes partial preemption for paid sick leave under Labor Code Section 246, but argues that preemption only begins as of March 29, 2024 with the most recent CBA because it is somehow unclear whether the employees made 130% of state minimum wage during the 2020-2023 time period. However, it is clear from the Complaint and the Parties' CBAs that covered bargaining unit employees are always paid well above the state minimum wage. (*See* RJN, Exh. B, p. 38 ("Appendix A – Wage Rates").) As of March 2021, which is four years before the complaint in this action was filed, the most junior aircraft mechanics were paid $33.61 per hour, and more senior mechanics were paid $34.96 per hour. (*Id.*) Plaintiff admits he was paid $36.81 per hour. (Compl., ¶ 46.) In 2021, the California minimum wage was $14.00 per hour for employers with 26 or more employees.[2] There can be no credible dispute that Plaintiff and others covered by the CBA earned at least 130% of state minimum wage during the entire statutory period. Therefore, *Step One* preemption applies, and Plaintiff's Seventh cause of action should be dismissed.

      d.    <u>Plaintiff Concedes His Eighth Cause of Action for Untimely Payment of Wages Should Be Dismissed.</u>

Plaintiff admits that the CBA exemption applies to his Labor Code Section 204 claims for untimely payment of wages. Plaintiff argues only that dismissal would only be proper for the time period following March 29, 2024. Again, as discussed above, dismissal of Plaintiff's Eighth cause of action is proper because nearly identical CBAs were in effect during the entire statutory period.

---

[2] https://www.dir.ca.gov/dlse/faq_minimumwage.htm.

### C. Plaintiff's Remaining Claims Should Be Dismissed Following Application of *Step Two* Analysis.

Only if the answer to the Step One analysis is "no" does the analysis proceed to the second step, which is to ask whether the plaintiff's state law right is "substantially dependent" on interpretation of the CBA. *Kobold*, 832 F.3d at 1033. The Court gets to *Burnside Step Two* analysis on 5 claims: (i) the First cause of action for failure to pay overtime wages due under the FLSA; (ii) the Second cause of action for failure to pay for all hours worked under the FLSA; (iii) the Third cause of action for failure to pay all wages owed under the California Labor Code; (iv) the Sixth cause of action for failure to provide compliant rest breaks; and (v) the Tenth cause of action for failure to reimburse expenses under Labor Code Section 2802.

#### a. This Court is Required to Interpret the CBA to Resolve Plaintiff's First Cause of Action Under the FLSA.

While Plaintiff's Opposition focuses heavily on whether FLSA rights can be *waived* by the collective bargaining grievance process, that is a separate question from the one before the Court. Plaintiff relies extensively on *Albertson's, Inc. v. United Food & Com. Workers Union, AFL-CIO & CLC*, 157 F.3d 758, 759 (9th Cir. 1998), for the proposition that statutory rights under the FLSA cannot be waived. *Albertson's* involved very different issues, with the employer suing the union under the LMRA. *Albertson's* holds that employees may bring FLSA claims in court without exhausting a CBA grievance procedure. *Albertson's*, 157 F.3d 758 at 760–61. Defendant does not argue otherwise. But *Albertson's* never addresses LMRA Section 301 preemption. The question here is whether the Court can adjudicate these theories without interpreting the CBA. The Court cannot. CBA interpretation is required, triggering preemption under Section 301.

Courts frequently find that claims brought pursuant to the FLSA require interpretation of the parties' underlying CBAs, as the Court should also find here. "[W]hile claims resting on the [the Fair Labor Standards Act ("FLSA")] are clearly

cognizable under that section, . . . claims which rest on interpretations of the underlying collective bargaining agreement must be resolved pursuant to the procedures contemplated under the LMRA, specifically grievance, arbitration, and, when permissible, suit in federal court under section 301. *Id.* quoting *Vadino v. A. Valey Engineers*, 903 F.2d 253, 266 (3d Cir. 1990).

In Plaintiff's Opposition, he argues that the FLSA is violated because the regular rate did not include "cash-in-lieu of benefits" for the first time. This term is not used in the Complaint, and in fact the section cited by Plaintiff in the Complaint concerning regular rate of pay calculations (Comp., ¶ 31), mentions a number of other theories of potential liability concerning overtime and the regular rate of pay. The Complaint does state that at some point in 2024, Plaintiff was paid $507 with a wage statement line item referencing "H/W 6.50." (Compl., ¶ 31.)

Importantly, what Plaintiff's Opposition exposes for the Court is that interpretation is clearly required. The operative CBA from the start of Plaintiff's employment through 2024 provides for "health & welfare" payments on behalf of employees. (*See* RJN, Exh. B, p. 36.) Section 36.02 of the CBA provides:

> For the Health & Welfare of employees, the company shall pay the amount indicated below for all hours paid (to a maximum of two-thousand eighty (2080) per year, up to forty (40) hours paid per week:
> The following H&W rates will become effective on the first full pay period after the effective dates.
>
> | Current | 11/11/2020 | 11/11/2021 | 11/11/2022 |
> |---|---|---|---|
> |  | $5.90 | $6.20 | $6.50 |
>
> In order to opt-out of the company-sponsored medical insurance plan, the employee must provide proof of insurance from one of the following plans: Tricare, VA, Spouse's employer plan, other retirement plan (federal government, etc.)

In the Complaint, as explained now in his Opposition, Plaintiff is interpreting this provision of the CBA to mean that cash is being provided to employees in lieu of benefits. However, another very reasonable interpretation of this provision is that an hourly amount is being paid towards insurance, on behalf of the employees, and that

separate information must be provided to the employer to "opt-out" of the insurance plan that is being funded. However, in order for the Court to figure this question out, the Court must necessarily interpret the terms of the CBA. That puts the analysis squarely with Step Two of *Burnside*. Dismissal is proper.

### b. This Court Should Dismiss Plaintiff's Second Cause of Action Under the FLSA.

Plaintiff does not cite any case law opposing the authority in Defendant's Motion holding that a cause of action for unpaid minimum wages under the FLSA should be summarily dismissed where there is no credible claim for failure to pay at least federal minimum wage for all hours worked. This is fatal to Plaintiff's claim because "[a]n employer violates [Section 206 of the FLSA] only when an employee's total weekly wage 'averaged across their total time worked' falls below the required minimum wage." *Adair v. City of Kirkland*, 185 F.3d 1055, 1063 (9th Cir. 1999). "This minimum wage requirement is calculated by finding 'the number of hours actually worked that week multiplied by the minimum hourly statutory requirement.'" *Nye v. Ltd.*, No. 2:16-CV-00702RFBCWH, 2017 WL 1228408, at *2 (D. Nev. Apr. 2, 2017) (citing *Hensley v. Macmillan Bloedel Containers, Inc.*, 786 F.2d 353, 357 (8th Cir. 1986). As pleaded, there is no plausible scenario where Defendant was not paying at least $7.25 per hour for all hours worked under this federal averaging standard, and dismissal is proper.

### c. Plaintiff's Remaining Causes of Action Similarly Require Interpretation of the CBA and Must Be Dismissed.

As to Plaintiff's Sixth cause of action for rest break violations, Plaintiff's Opposition argues that *Magana v. Int'l Paper Co.*, 2:24-cv-08867, 2025 WL 819716 (C.D. Cal, Jan. 30, 2025) applies. But in *Magana*, the court specifically noted that the defendant had not argued that the rest break claims required interpretation of the CBA, and defendant focused on what the CBA did not define (e.g., how to define a "continuous work schedule" as was relevant in that case). *See Magana*, 2025 WL

1   819716, at *12.  Not so here, where interpretation of the CBA would be required to
2   determine if rest breaks have been authorized and permitted in a manner consistent
3   with California law.

4         As to Plaintiff's Tenth cause of action for expense reimbursements, Plaintiff's
5   Opposition does not respond to the *Linebarger* case Defendant cited in the Motion.  In
6   *Linebarger*, as here, the CBA provided that the employer would reimburse expenses,
7   including "necessary maintenance tools."  *Linebarger v. Graphic Packaging Int'l,*
8   *LLC*, 2020 WL 1934958, at *6 (C.D. Cal., Apr. 22, 2020).  The court held that cell
9   phone usage could be interpreted under the CBA to be a "necessary maintenance tool"
10  but to figure that out, interpretation was required and therefore Section 301 preemption
11  applied.  The Complaint here alleges that cell phone usage was required to "use on
12  flights" and be "notified of any updates."  (Compl., ¶ 39.)   Here, the CBAs provide
13  for payment for "Travel Time and Expenses" under Section 32.04.  Section 32.04 of
14  the CBAs provides the following: "(a) When an employee is required to work away
15  from MCAS Miramar or Camp Pendleton, they shall be paid the appropriate hourly
16  rate for time spent traveling in addition to transportation costs, if any.  (b) If an
17  employee is sent to work out of town, they shall receive, in addition to the above,
18  transportation, board, lodging, ***etc.***"  (RJN, Exh. B, Section 32.04.) (Emphasis added.)
19  Whether, among other things, cell phones are included in the "etc." portion of this
20  section of the CBA clearly requires interpretation from the Court, and preemption
21  applies.  These claims should be dismissed.

22        Plaintiff's derivative claims should similarly be dismissed. Regarding
23  Plaintiff's derivative Section 226 wage-statement claim and UCL claim, said claims
24  depend on the underlying claims.  If the Court dismisses those claims, it must dismiss
25  these as well.  Plaintiff offers no persuasive rebuttal to this point.
26  / / /
27  / / /
28  / / /

## III. CONCLUSION

The Court should grant Defendant's Motion to Dismiss.

DATED: October 3, 2025

PROCOPIO, CORY, HARGREAVES & SAVITCH LLP

By: */s/ Virginia L. Miller*
Virginia L. Miller
Marina C. Gruber
Taylor Tejeda
Attorneys for Defendant
PKL SERVICES, INC.