UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| DANNY BALVANEDA, on behalf of others similarly situated,<br><br>  Plaintiffs,<br><br>  vs.<br><br>PKL SERVICES, INC.; and DOES 1 through 50, inclusive<br><br>  Defendants. | Case No.: 3:25-cv-00963-GPC-JLB<br><br>**ORDER:**<br>**(1) GRANTING DEFENDANTS' REQUEST FOR JUDICIAL NOTICE**<br>**(2) GRANTING IN PART AND DENYING IN PART THE MOTION TO DISMISS**<br><br>**[ECF No. 17]** |
|---|---|

Before the Court are Defendants' requests for judicial notice, ECF Nos. 17-1, 22-1, and Defendants' motion to dismiss Plaintiff's complaint, ECF No. 17. The motion to dismiss has been fully briefed. ECF Nos. 20, 22. On October 31, 2025, the Court held a hearing on this matter. ECF No. 25. At the conclusion of the hearing, the Court granted Plaintiff leave to file a sur-reply, which was filed on November 7, 2025. ECF No. 26.

For the reasons below, the Court GRANTS in part and DENIES in part Defendant's motion to dismiss.

///

## FACTUAL BACKGROUND

Defendant PKL Services Inc. ("PKL") is a California corporation that maintains operations and conducts business throughout California, including this district. ECF No. 10 ("FAC") ¶ 15. Defendants Does 1-50 are part of an integrated employer enterprise and have "common ownership, common management, interrelationship of operations, and centralized control over labor relations." *Id*. ¶¶ 18-19.

Plaintiff Balvaneda ("Plaintiff"), like other members of the defined Class, worked for Defendants PKL and Does 1-50 (collectively, "Defendants) as a non-exempt employee and was compensated on an hourly basis. *Id*. ¶ 25. Plaintiff worked as an aircraft mechanic from May 2024 to December 2024, FAC ¶ 13, and was a member of the District Lodge No. 725 International Association of Machinists and Aerospace Workers for the MV-22 Program at all times during his employment, ECF No. 17-1 ("Mot.").

A collective bargaining agreement ("CBA") was in effect throughout and covering Plaintiff's and other class members' employment. Mot. at 9[1]; ECF No. 1 at 2; *see also* ECF No. 17-2, Ex. A; ECF No. 22-1. Exs. B, C, D. The CBA governs the terms and conditions of Plaintiff's employment and includes details on the minimum hourly and overtime compensation for the alleged class members, hours of work, meal and rest periods, and rights concerning premium and overtime pay. Mot. at 9. The CBA also outlines a grievance procedure. *Id*. at 10. The CBA was recently revised and became effective on March 29, 2024. ECF No. 17-2, Ex. A. The CBA prior to this revised version was in effect from July 27, 2020 to January 1, 2024. ECF No. 22-1, Exs. B, D.

Plaintiff alleges that class members were not paid for all wages owed. Class members would clock in when they arrived at work, but the clock-in "would often be earlier than their scheduled shift because of the demands of the job and pressure to timely complete tasks such as unwrapping aircraft parts." FAC ¶ 26. However, Defendants

---

[1] Throughout the order, the pagination for docketed documents is derived from the numbering generated by the ECF system.

required class members to "report only 8 hours worked even when Plaintiff and the class members were completing work before their shift." *Id*. A similar practice would occur in the evening. Class members were required to "clean up and put tools away while off-the-clock" because there wasn't allocated or additional time to complete those tasks during their scheduled shift. *Id*. ¶ 27.

Adding to the unpaid work, Plaintiff alleges that there were timekeeping errors. Despite recording their hours, this time worked "would not be accurately reflected on their paystubs resulting in unpaid hours worked." *Id*. ¶ 28. Class members would notify Defendants, but Defendants "would fail to correct this issue, resulting in unpaid minimum wages." *Id*.

This practice also added to unpaid overtime for class members. For example, "Plaintiff's time records show he worked 10 hours on 9/23/24, 9/24/24, and 9/25/24." *Id*. ¶ 30. However, Defendants "did not account for overtime when Plaintiff and class members worked more than 8 hours in a day." *Id*. Even when overtime was paid, the overtime rate would not account for earned commissions, shift differentials, and other forms of non-excludable remuneration. *Id*. ¶ 31. In Plaintiff's case, during the 3/02/24 to 3/15/24 pay period, "Plaintiff earned $507 in additional remuneration titled 'H/W 6.50,'" but "the 12 overtime hours were paid at 1.5x Plaintiff's base rate of $36.81, rather than 1.5x his regular rate of pay." *Id*. His double time hours were "paid at 2x Plaintiff's base rate of $36.81, rather than 2x his regular rate of pay." *Id*.

Plaintiff alleges a similar issue occurred with sick leave. Defendants would pay class members paid sick leave at their base hourly rate rather than the correct rate that would account for bonuses, commissions, and other forms of remuneration, as required by California's paid sick leave laws. *Id*. ¶ 32. Plaintiff maintains this practice "was applied as a matter of common policy." *Id*.

Additionally, class members "routinely experienced missed, late, short, and interrupted meal periods in order to keep up with the high demands of the job." *Id*. ¶ 33. In one regular occurrence for Plaintiff, "Plaintiff's work leader often asked Plaintiff

questions about specific jobs he was working on" throughout the meal period. *Id.* These non-compliant meal periods were automatically deducted from the paid workday. *Id.* ¶ 34.

In a similar manner, Plaintiff claims that Defendants failed to provide all rest periods to the class members. *Id.* ¶ 36. Class members "were often asked questions about specific jobs they were working on at all times of the day and were required to timely respond," which prevented the occurrence of compliant rest periods. *Id.* Class members were not paid a rest period premium at the lawful rate of pay for their noncompliant rest periods. *Id.*

Finally, Plaintiff alleges that Defendant required "class members to incur costs for work-related purposes without full reimbursement." *Id.* ¶ 38. Specifically, class members used personal cell phones for work-related purposes, such as receiving notifications about work updates and logging hours through a work-related app. *Id.* ¶ 39. Class members did not receive reimbursement for work-related use of their personal cell phones. *Id.* This extended to other tools required to complete work. For example, Plaintiff had to pay around $1,500 to obtain tools necessary for his work. *Id.* ¶ 40.

Based on these allegations, Plaintiff asserts the following federal labor and California state wage and hour claims on behalf of himself and the putative class members: (1) failure to pay all overtime wages (29 U.S.C. §§ 201 *et seq.*); (2) failure to pay for all hours worked (*id.*); (3) failure to pay all wages owed (Cal. Lab. Code §§ 200, 218, 1194, 1194.2, 1197); (4) failure to pay all overtime wages (*id.* §§ 510, 1194); (5) meal period violations (*id.* §§ 226.7, 512); (6) rest period violations (*id.* §§ 226.7, 516); (7) failure to pay all paid sick leave wages (*id.* §§ 200, 218, 246 *et seq.*); (8) untimely payment of wages (*id.* §§ 204, 210, 218); (9) wage statement violations (*id.* § 226); (10) failure to reimburse business expenses (*id.* § 2802); and (11) violation of California's Unfair Competition Law ("UCL") (Cal. Bus. & Prof. Code § 17200 *et seq.*). FAC ¶¶ 56-113.

/ / /

## PROCEDURAL HISTORY

On March 5, 2025, Plaintiff filed a complaint against Defendants PKL Services, Inc., 4M HR Logistics, and Does 1-50 on behalf of himself and "[a]ll current and former non-exempt employees who worked for Defendants in California at any time from four years ... prior to the filing of this action through date of class certification." ECF No. 1-5 ¶ 21. On April 21, 2025, Defendants removed this case from state court, claiming that there was federal question jurisdiction under § 301 of the Labor Management Relations Act ("LMRA"). ECF No. 1. On June 26, 2025, Defendant 4M HR Logistics was dismissed from the case, and Plaintiff filed an amended complaint. ECF Nos. 10, 11. On July 24, 2025, Defendants moved to dismiss the complaint in its entirety, ECF No. 17, and the motion has now been fully briefed, *see* ECF Nos. 20, 22.

## LEGAL STANDARD

Rule 12(b)(6) allows a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Dismissal under Rule 12(b)(6) is appropriate where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory. *Election Integrity Project Cal., Inc. v. Weber*, 113 F.4th 1072, 1081 (9th Cir. 2024) (citing *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)). To survive a motion to dismiss, the complaint must contain a "short and plain statement showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), backed by sufficient facts that make the claim "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). Plausibility requires "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. Rather, it requires enough factual content for the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). In reviewing the plausibility of a complaint, courts must "accept factual allegations in the complaint as true and construe them in the light most favorable to the non-moving party." *Dent v. Nat'l Football League,* 968 F.3d 1126, 1130 (9th Cir. 2020). But courts do not accept as true allegations

that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences. *Coronavirus Rep. v. Apple, Inc.*, 85 F.4th 948, 954 (9th Cir. 2023). Ultimately, the court must be able to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663.

Where a motion to dismiss is granted, "leave to amend should be granted 'unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.'" *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)).

### REQUEST FOR JUDICIAL NOTICE

Generally, on a motion to dismiss, courts will limit their review to the contents of the complaint and may only consider extrinsic evidence that is properly presented as part of the complaint. *See Lee v. City of L.A.*, 250 F.3d 668, 688-89 (9th Cir. 2001). However, under Federal Rule of Evidence 201, a district court may take notice of facts not subject to reasonable dispute that are capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b).

Defendants request the Court to take judicial notice of several items. ECF Nos. 17-2, 22-1. The items are as follows: (1) the declaration of Kevin Beaver in *Danny Balvaneda v. PKL Services, Inc., 4M HR Logistics*, Case No. 3:25-cv-01569-GPC-AHG, Docket No. 1-5, ECF No. 22-1, Ex. A, (2) the CBA between PKL and the International Association of Machinists and Aerospace Workers, which was effective from July 27, 2020 to June 30, 2022, ECF No. 22-1, Ex. B, (3) the bridge agreement between PKL and the International Association of Machinists and Aerospace Workers, which assumed the obligations of the prior CBA, ECF No. 22-1, Ex. C, (4) the memorandum of understanding between PDL and the International Association of Machinists and Aerospace Workers that extended the collective bargaining agreement through January 1, 2024, ECF No. 22-1, Ex. D, and (5) the CBA between PKL and the International

Association of Machinists and Aerospace Workers, which became effective on March 29, 2024, ECF No. 17-2, Ex. A.

The Court judicially notices Item No. 1. Item 1 is relevant to the instant case and is a matter of public record, so the Court may take judicial notice of it "without converting a motion to dismiss into a motion for summary judgment." *Lee*, 250 F.3d at 689 (quotations and citations omitted). But the Court will not take judicial notice of the truth of any disputed facts contained in those public records. *See id.*

Item Nos. 2-5 are Defendants requests to take judicial notice of the collective bargaining agreement from 2020 to the present. *See* ECF No. 22-1. All four of those items are mentioned in Kevin Beaver's declaration filed with the related case *Danny Balvaneda v. PKL Services, Inc., et al.*, Case No. 25-cv-01569-GPC-AHG, Docket No. 1-5. *See* ECF No. 22-1 at 2; ECF No. 17-2 at 2. Item 5 was also attached to the related case's notice of removal and was referenced in the declaration. *See* ECF No. 17-2 at 2; ECF No. 1-3 ¶ 4. The related case is "predicated upon and entirely derivative of the underlying putative class and collective action, and therefore necessarily relies on the same operative CBAs." ECF No. 22-1 at 2-3. Courts routinely take judicial notice of CBAs at the motion to dismiss phase, especially when reference to the CBA is required to resolve issues of preemption. *See, e.g.*, *Hall v. Live Nation Worldwide, Inc.*, 146 F. Supp. 3d 1187, 1193 (C.D. Cal. 2015) (taking judicial notice of a CBA that formed the basis for defendant's argument that certain claims were preempted by the LMRA); *see also Lujano v. Piedmont Airlines, Inc.*, 734 F. Supp. 3d 988, 995 (C.D. Cal. May 16, 2024) ("[T]he court takes judicial notice of the CBA because courts regularly take judicial notice of collective bargaining agreements on a motion to dismiss when the documents are not subject to reasonable dispute," and because "Plaintiff neither opposes Defendant's request nor disputes the validity of the CBA"). Accordingly, the Court takes judicial notice of Item Nos. 2-5.

In sum, the Defendants' request for judicial notice on all five items is GRANTED, and the Court will consider those items in deciding the motion to dismiss.

# DISCUSSION

Defendants advance several arguments in support of its motion to dismiss. In essence, Defendants argue that all of Plaintiff's claims are preempted under LMRA § 301 pursuant to the two-step analysis detailed in *Burnside v. Kiewit Pac. Corp.*, 491 F.3d 1053 (9th Cir. 2007). Second, Defendants argue that dismissal of the Plaintiff's Third Cause of Action, if not dismissed through preemption, would be appropriate because the single claim's survival would be "inefficient and contrary to the goal of preserving arbitration and efficiency under the CBA." Mot. at 24.

Plaintiff's opposition proceeds in two parts. Plaintiff first maintains his claims are not subject to the CBA Grievance Procedure. ECF No. 20 ("Opp.") at 3-7. Second, Plaintiff disputes the preemption of all claims under § 301, arguing that the third cause of action is not preempted or subject to arbitration, the fourth, seventh, and eighth causes are only partially preempted, and all remaining causes are entirely not preempted.

## I. Section 301 Preemption

Defendant first argues that Plaintiff's claims are preempted under LMRA § 301. Section 301(1) provides federal jurisdiction over "[s]uits for violation of contracts between an employer and a labor organization." 29 U.S.C. § 185(a). "The preemptive force of section 301 is so powerful as to displace entirely any state claim based on a collective bargaining agreement, and any state claim whose outcome depends on analysis of the terms of the agreement." *Young v. Anthony's Fish Grottos, Inc.*, 830 F.2d 993, 997 (9th Cir. 1987).

The Ninth Circuit has applied a two-step test to determine whether a claim is preempted by § 301. *Mellon v. Universal City Studios, LLC*, 625 F. Supp. 3d 1007, 1013 (C.D. Cal. 2022). First, the court asks "whether a particular right inheres in state law or, instead, is grounded in a CBA." *Burnside*, 491 F.3d at 1060. "If the claim is founded directly on rights created by a CBA, preemption is warranted." *Mellon*, 625 F. Supp. 3d at 1013 (citing *Caterpillar Inc. v. Williams*, 482 U.S. 386, 394 (1987)). Second, the court asks "whether a state law right is 'substantially dependent' on the terms of a CBA."

*Burnside*, 491 F.3d at 1060 (citing *Caterpillar*, 482 U.S. at 394). The key question here is "whether the claim can be resolved by 'looking to' versus interpreting the CBA." *Burnside*, 491 F.3d at 1060 (internal citations omitted). If the former, the claim is not preempted; if the latter, the claim is preempted. *Id.*

### a. Cause 1: Overtime Wages

Under the Fair Labor Standards Act ("FLSA"), "no employer shall employ any of his employees…for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a). "Regular rate" is defined to include all remuneration for employment but contains eight exclusions. 29 U.S.C. § 207(e). As highlighted by Defendants, (1) employer contributions to health and welfare plans, (2) "extra compensation provided by a premium rate paid for certain hours worked by the employee in any day or workweek because such hours are hours worked in excess of eight in a day or in excess of the maximum workweek applicable," and (3) "extra compensation provided by a premium rate paid for work by the employee on Saturdays, Sundays, holidays, or regular days of rest, or on the sixth or seventh day of the workweek, where such premium rate is not less than one and one-half times the rate established in good faith for like work performed in nonovertime hours on other days" are excluded from the "regular rate" definition. 29 U.S.C. § 207(e)(4)-(6).

Plaintiff, without mention of the CBA, has alleged in its FAC that Defendants "failed to pay Plaintiff and the FLSA Collective at one-and-one half times the regular rate of pay." FAC ¶ 62. However, Defendants have argued that this FLSA cause of action is precluded under Step Two of the *Burnside* analysis, as it would require interpretation of the CBA's reference to "working rate of pay" and "regular rate of pay" and how the FLSA exclusions apply. Mot. at 14. Plaintiff has opposed, maintaining that the Court is only required to look to the CBA rather than interpret it for the FLSA claim. Opp. at 9.

This Court agrees with Plaintiff. "[C]laims resting on the language of [FLSA] are clearly cognizable under that section… [but] claims which rest on interpretations of the underlying collective bargaining agreement must be resolved pursuant to the procedures contemplated under the LMRA." *Vadino v. A. Valey Eng'rs*, 903 F.2d 253, 266 (3d Cir. 1990). However, it is unclear why resolution of this claim requires interpretation of the CBA, especially when the motion does not specifically point towards any CBA sections for their arguments that create an "active dispute over 'the meaning of contract terms.'" *Alaska Airlines Inc. v. Schurke*, 898 F.3d 904, 921 (9th Cir. 2018) (quoting *Livadas v. Bradshaw*, 512 U.S. 107, 124 (1994)).

While in its reply Defendants supplement their argument by pointing to Section 36.02 of the prior CBA, that section is not necessary to apply the FLSA exclusion on health and welfare funds. As Plaintiff suggests, whether the funds were paid is "not a matter of contract interpretation or a question the CBA can answer." Opp. at 11; *see Oliverio-Still v. AVMAC LLC,* No. 24-CV-0870-L-DEB, 2025 WL 674552, at *4 (S.D. Cal. Mar. 3, 2025) ("While Article 17.02 of the CBA provides that employees receive Health & Welfare payments according to a specified payment schedule, this provision merely provides the set rate the employees are paid. Taking the rate from the schedule does not involve interpreting the CBA.").

The mere fact that the Court might consult the CBA or that some aspects of wages are addressed in the CBA does not turn the claim into one that requires interpretation of the CBA.  *See Lopez v. S E Pipe Line Constr. Co.*, 2024 WL 171391, at *5 (S.D. Cal. Jan. 16, 2024); *Cramer v. Consol. Freightways Inc.*, 255 F.3d 683, 692 (9th Cir. 2001) ("A creative linkage between the subject matter of the claim and the wording of a CBA provision is insufficient; rather, the proffered interpretation argument must reach a reasonable level of credibility."). Thus, the Court finds that the first cause of action is not precluded under § 301.

### b. Cause 3: All Wages Owed

Defendants maintain that the third cause of action is also preempted by § 301 but provides no analysis as to how the CBA preempts this claim. Mot. at 24. Defendants' reply similarly side-steps an analysis and only mentions that this cause of action should be dismissed under Step Two of *Burnside*. ECF No. 22 at 8.

As discussed above, though the Court might consult the CBA, that action alone does not indicate that CBA interpretation is required. Given that Defendants have not identified any part of the CBA that might create a dispute, the third cause of action is not preempted under § 301.

### c. Cause 5: Meal Periods

If § 512(e)'s requirements are met, the statute's subdivisions requiring meal periods would not apply to Plaintiff and other aggrieved employees. Plaintiff is "employed in a construction occupation," Cal. Lab. Code § 512(f)(1), so subdivision (e) applies if the following conditions are satisfied:

> (1) The employee is covered by a valid collective bargaining agreement.
>
> (2) The valid collective bargaining agreement expressly provides for the wages, hours of work, and working conditions of employees, and expressly provides for meal periods for those employees, final and binding arbitration of disputes concerning application of its meal period provisions, premium wage rates for all overtime hours worked, and a regular hourly rate of pay of not less than 30 percent more than the state minimum wage rate.

*Id.* §§ 512(e)(1), 512(e)(2).

In this case, Section 24.02 of the CBA provides: "Based on the designated work schedule, a normal shift will consist of eight (8) consecutive hours, twelve (12) consecutive hours or other scheduled hours based on the schedule design. The normal

hours are exclusive of a meal period of between thirty (30) and sixty (60) minutes." ECF No. 17-2 at 26.

Based on the statutory language and this provision of the CBA, Defendants argue that the Cal. Lab. Code § 512(e) exemption requirements are met, and the meal period claim is preempted under Step One. Mot. at 18-19. Plaintiff responds that Defendant does not meet § 512(e)'s requirements because the CBA first does not *expressly* provide for employee's meal periods as required but instead only implies a meal period can be taken. Opp. at 15-16. Second, because of the lack of express meal period provisions, meal period disputes do not require final binding arbitration under the CBA. Opp. at 16. Finally, Plaintiff maintains that interpretation of the CBA is not required under Step Two, and alternatively, if the cause is preempted, the preemption only applies to the dates the CBA was effective. *Id*.

To meet § 512(e)'s requirements, an express provision for meal periods does not need to detail every aspect of the meal period afforded to employees. *See Araquistain v. Pac. Gas & Elec. Co.,* 229 Cal. App. 4th 227, 237-38 (2014) (finding the provision stating "shall be permitted to eat their meals during work hours" met the § 512(e) requirement). In this case, Section 24.02 of the CBA goes beyond a basic reference, specifying that the meal period would be between thirty minutes to an hour and would not be included in a normal shift. Given the specifications provided, even if brief, the Section expressly refers to meal periods.

Because meal periods are expressly provided for, Plaintiff's argument that the CBA's binding arbitration procedure is not implicated fails, instead indicating that all requirements of § 512(e) are met. Thus, the fifth cause of action is preempted under Step One.

### d. Cause 6: Rest Periods

Defendants argue that Plaintiff's rest period claim is preempted under Step One because it would require the Court to interpret Section 24.05 of the CBA. Mot. at 20. That section provides: "All employees will receive two (2) uninterrupted paid twenty (2)

minute breaks per day. One (1) to be taken during the first half of their work day and one (1) to be taken during the second half of their work day. Breaks may be staggered and will be approved by management so as to not interfere with customer requirements. For those employees on a twelve (12) hour shift, there will be a third (3rd) twenty (20) minute paid break." *Id.* at 20. Defendants specifically highlight that "first half of their work day," "second half of their work day," and the staggering of breaks must be interpreted to adjudicate the claim. *Id.*

As discussed for the first cause of action, Step Two preemption requires an active dispute over the meaning of contract terms. Thus, "a state law claim may avoid preemption if it does not raise questions about the scope, meaning, or application of the CBA." *Curtis v. Irwin Indus., Inc.*, 913 F.3d 1146, 1153 (9th Cir. 2019). Within this understanding, Defendant has not adequately shown where CBA interpretation would be needed to determine whether Plaintiff and putative class members were given compliant rest periods. For example, understanding the staggering of breaks, as spotlighted by Defendants, does "not turn on a resolution of the meaning of specific terms in the CBA…[but instead] turn[s] on how the facility was actually operating" for rest periods, which does not require interpretation of the CBA. *See Magana v. Int'l Paper Co.*, No. 2:24-CV-08867-AH-(MARX), 2025 WL 819716, at *5 (C.D. Cal. Jan. 30, 2025).

Thus, the sixth cause of action is not preempted at Step Two.

### e. Cause 10: Business Expense Reimbursements

Defendant argues that Plaintiff's expense reimbursement claim should be preempted under Step Two because "it necessitates interpretation of the CBA provisions governing expense reimbursement. Mot. at 22. Plaintiff responds that "this allegation is rooted in state law and does not require CBA interpretation." Opp. at 19.

Plaintiff brings his claim pursuant to California Labor Code § 2802, which states, in relevant part, that "[a]n employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties." Cal. Lab. Code § 2802(a). Thus, Plaintiff alleges that Defendant

failed to satisfy its obligations under this state law. FAC ¶ 106. Plaintiff does not allege that "the terms of the [CBA] violate state law or raise any dispute as to the interpretation of the [CBA.] Thus, resolution of [this claim] does not require interpreting the [CBA.]" *Gonzalez Quiroz v. Coffman Specialties, Inc.*, 2020 WL 7258725, at *4 (S.D. Cal. Dec. 10, 2020). Accordingly, Plaintiff's expense reimbursement claim is not preempted under § 301.

### f. Cause 9 & 11: Derivative Claims

Defendants have argued that both the ninth and eleventh causes of action are derivative of the other claims and, thus, should be preempted because Plaintiff's other causes of action are preempted. Mot. at 22, 24. Given that Defendant only argues preemption under this line of reasoning and the Court has not found all other claims preempted, the ninth and eleventh causes of action are also not preempted.

### g. Causes 4, 7, & 8: Preemption Conceded

Defendants have argued that under Cal. Lab. Code §§ 514, 245.5, 204(c) Plaintiff's fourth, seventh, and eighth causes are entirely preempted. Mot. at 16-17, 20-21. Defendants have supplied a prior CBA in a request for judicial notice that came into effect in 2020. *See* ECF No. 22 at 3-4; ECF No. 22-1. Plaintiff has conceded these sections of the Labor Code apply and that an applicable CBA was in effect during the class and collective period. ECF No. 26 at 2. Accordingly, Plaintiff has conceded that his Fourth, Seventh, and Eighth causes of action are preempted and subject to dismissal. *Id*.

## II. Cause 2: All Hours Worked

Under 29 U.S.C. § 206(a) of FLSA, an employer must pay at least the federal minimum wage. In his complaint, Plaintiff has claimed that Defendants have "failed to compensate Plaintiff and the FLSA Collective all wages under FLSA, including agreed upon wages and the applicable minimum wage." FAC ¶ 70. Rather than using the *Burnside* preemption analysis, Defendants argue dismissal because there is "no scenario where Plaintiff earned less [than] an average hourly wage." Mot. at 16 (quotations omitted).

A court must reject any minimum wage claim brought if it finds that the plaintiff's "salary, when averaged across their total time worked, still [paid] them above minimum wage." *Adair v. City of Kirkland*, 185 F.3d 1055, 1063 (9th Cir. 1999); *see also Hensley v. MacMillan Bloedel Containers, Inc.,* 786 F.2d 353, 357 (8th Cir. 1986) (finding no violation of § 206(a) if the total weekly wage paid is equal or more than the hours worked multiplied by the minimum hourly statutory requirement). Here, the FAC alleges Plaintiff worked more than 8 hours per day and, at times, more than 40 hours per week. FAC ¶ 30. Plaintiff has also alleged that his base rate of pay is $36.81 per hour. *Id*. ¶ 31. Though Plaintiff has alleged that hours he worked beyond 8 hours per day or 40 hours per week went unpaid, he has not pled enough to plausibly claim that he was not paid on average at least $7.25 per hour. The motion to dismiss the second cause of action is thus GRANTED.

## CONCLUSION

For the foregoing reasons, the Court GRANTS the motion to dismiss the second cause of action with leave to amend, GRANTS the motion to dismiss the fourth, fifth, seventh, and eighth causes of action without leave to amend, and DENIES the motion to dismiss the first, third, sixth, ninth, tenth, and eleventh claims. Plaintiff shall file an amended complaint within **21 days** of the Court's Order.

IT IS SO ORDERED.

Dated: December 8, 2025

Hon. Gonzalo P. Curiel
United States District Judge